### ESTATE OF Glenda RHOADES, Deceased

### NO. 02-15-00353-CV

Court of Appeals of Texas, Fort Worth.

DELIVERED: September 8, 2016

---

3. *See* Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2005).

M. Keith Branyon, Colin L. Murchison, Jackson Walker L.L.P., Fort Worth, TX, for Appellant.

Josh Norrell, Norrell Law Office, Weatherford, TX, for Appellee.

PANEL: WALKER, GABRIEL, and SUDDERTH, JJ.

## OPINION

BONNIE SUDDERTH, JUSTICE

### I. Introduction

In two issues, appellants Norma Anderson, Paula Gilleland, Gerald Don Marrs, Joann Dycus, and Vicki George appeal the trial court's judgment for appellee Elise Kinler, arguing that the trial court erred by denying their motion for summary judgment and by granting Kinler's motion for summary judgment. We reverse.

### II. Factual and Procedural Background

Article III of Glenda Rhoades's will, which she signed on October 4, 2007, made the following bequests:

- the real property constituting her residential homestead to her father, Glen Rhoades,
- all of her personal property to her father,
- "all of the rest of [her] estate," to her father, but if he predeceased her, to

Elise Kinler, but if Kinler should predecease her, to Kinler's son, Michael Kinler, and

- "any other property that has not been disposed of under any other provision of this Will" to her heirs at law.

Rhoades also named Kinler as the independent executor of her will. See Tex. Est. Code Ann. § 401.001(a) (West 2014).[1] Rhoades died on August 1, 2013, her father having predeceased her.

After Kinler filed an application to probate Rhoades's will in the Parker County Court, seeking the issuance of letters testamentary, Anderson filed an opposition to the appointment of Kinler as independent executor and an application for the appointment of a temporary administrator. See id. §§ 55.001, 256.052, 301.052, 301.101, 452.002 (West 2014 & Supp. 2016). Anderson also filed a motion to transfer the case to the county court at law in Parker County, which was granted on October 2, 2013.[2]

The will was initially ordered admitted to probate on December 12, 2013, but that order was subsequently set aside in a January 20, 2014 agreed order that also revoked the letters testamentary that had been issued to Kinler. An order was then issued appointing Kinler as temporary administrator with bond; letters of temporary administration were issued to her on May 19, 2014.

---

1. As observed in our prior opinion in this case, see Estate of Rhoades, No. 02–15–00081–CV, 2015 WL 3658065, at *1 n. 2 (Tex.App.–Fort Worth June 11, 2015, no pet.) (mem. op.), because the date of Rhoades's death and some of the subsequent probate filings occurred before January 1, 2014, specified portions of the probate code, not their counterparts in the recently codified estates code, would apply to some aspects of the administration of Rhoades's estate. See id. As in that opinion, we note that because the estates code sections at issue are not substantively different from their predecessors in the probate code, we will cite to the estates code. See id.

2. A county court at law in Parker County does not have the jurisdiction of a probate court except in contested probate matters. Tex. Gov't Code Ann. § 25.1863 (West Supp. 2016).

Both sides filed petitions for declaratory relief. Appellants sought a declaration that Rhoades's estate passed to Appellants under the residuary clause because the distributions to Rhoades's father failed. Kinler requested a declaration that the entire estate passed to Kinler because Rhoades's father predeceased her. Both Appellants and Kinler pleaded for the recovery of their respective attorney's fees.

Appellants and Kinler also filed competing motions for summary judgment, both claiming the unambiguous terms of the will justified a judgment in their favor on their respective declaratory-judgment claims. *See* Tex. R. Civ. P. 166a(c). Appellants also moved for summary judgment on their claim for attorney's fees, attaching summary judgment evidence proving up the requested amount of fees. Kinler did not seek the recovery of attorney's fees in her motion. On January 28, 2015, the trial court entered an order granting Kinler's summary judgment motion and denying Appellants'.

On March 24, 2015, Appellants filed a notice of nonsuit regarding their September 2013 contest. Approximately a week later, the trial court issued a new order admitting the will to probate, and two weeks after that, the trial court granted letters testamentary to Kinler. The trial court then granted the parties' agreed motion to dismiss their attorney's fee claims and transferred the case back to the county court on October 27, 2015. This appeal followed.

### III. Discussion

In their first issue, Appellants argue that the trial court erred by granting Kinler's motion for summary judgment because although Kinler claimed that the will was unambiguous, "numerous edits, deletions and modifications" were required to secure the estate for her. In their sec-

ond issue, Appellants argue that the trial court erred by denying their motion for summary judgment because if all of the language in the unambiguous will is harmonized with no edits, deletions, or modifications, the entire estate must pass to them.

#### A. Jurisdiction

■ Before we can reach the merits of either issue, we must address Appellants' contention that the trial court lacked jurisdiction to enter the summary judgment. Appellants argue that because at the time the trial court granted Kinler's summary judgment motion the order admitting the will to probate had been set aside, any decision with regard to the will's meaning was not ripe for consideration, and the trial court's summary judgment was merely an advisory opinion. Kinler responds that the will could be construed by declaratory judgment without being admitted to probate and that Appellants waived their ripeness complaint by filing and arguing their own motion for summary judgment during the same time period.

■ First, a defect in subject matter jurisdiction can be raised at any time, may be raised for the first time on appeal, and may not be waived by the parties, *Tex. Ass'n of Bus. v. Tex. Air. Control Bd.*, 852 S.W.2d 440, 445 (Tex.1993), and " '[r]ipeness is an element of subject matter jurisdiction.' " *Levatte v. City of Wichita Falls*, 144 S.W.3d 218, 222 (Tex.App.–Fort Worth 2004, no pet.) (quoting *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998), *cert. denied*, 526 U.S. 1144, 119 S.Ct. 2018, 143 L.Ed.2d 1030 (1999)). Therefore, Appellants could not waive their ripeness complaint.

Having reviewed the admittedly sparse case law regarding whether a will must be admitted to probate before it becomes ripe for construction under the Uniform De-

claratory Judgments Act (UDJA), this appears to be a case of first impression for our court. However, it does appear that in practice, Texas courts have construed wills under the UDJA before, during, and after admitting the will to probate.[3]

Although not argued or decided based upon issues of ripeness or subject matter jurisdiction, the San Antonio court, in *Harkins v. Crews*, has most directly addressed the issue of whether a will can be construed under the UDJA before being admitted to probate. 907 S.W.2d 51, 55–57 (Tex.App.–San Antonio 1995, writ denied). *Harkins* involved three wills—dated in 1983, 1987, and 1990, respectively—and five codicils. *Id.* at 54. After the 1990 will and codicils were offered for probate by decedent's second wife, her daughter, her grandson, and the attorney who drafted the 1990 will, the decedent's children by his first wife opposed the application, applied for probate of the 1983 will and codicils, and sought a declaratory judgment invalidating the 1987 will and codicils. *Id.* at 54. The jury found that the 1987 and 1990 wills and codicils were executed when the decedent lacked testamentary capacity and that the 1990 will and codicils were procured by undue influence. *Id.* Thereafter, the trial court admitted the 1983 will to probate, denied probate of the 1990 will

and codicils, and declared the 1987 will and codicils invalid. *Id.* at 54–55.

On appeal, the appellants complained that the trial court had erred by rendering a declaratory judgment invalidating the 1987 will and codicils and argued that Texas law precluded the use of a declaratory judgment action to determine the validity of a will that had not been offered for probate. *Id.* at 55. Our sister court disagreed, observing that the trial court's action in rendering the declaratory judgment as to the invalidity of the 1987 will and codicils permitted a final determination of the rights of the parties from which the ultimate disposition of the decedent's estate could be determined, thus furthering the public policy of promoting judicial economy. *Id.* at 56–57. In reaching its conclusion, the court noted that the plain language of section 37.004 of the UDJA did not indicate that a will whose validity is being challenged must be one that has been offered or admitted to probate. *Id.* at 55–57. *Compare* Tex. Est. Code Ann. § 256.001 (West 2014) (stating that a will is not effective to prove title to, or the right to possession of, any property disposed of by the will until the will is admitted to probate), *with id.* § 101.001(a)(1), (3) (West 2014) (providing that if a person dies leaving a lawful will, all of the person's estate that is devised by the will

---

3. In *McClure v. JPMorgan Chase Bank*, the trial court granted summary judgment declaring the effect of a purported holographic will before admitting any will into probate. 147 S.W.3d 648, 650 (Tex.App.–Fort Worth 2004, pet. denied). After the summary judgment was signed granting the declaratory relief sought, the trial court signed an order admitting a different will into probate and authorizing letters testamentary. *Id.* at 651. In *In re Estate of Gibbons*, the trial court admitted the will to probate and entered a declaratory judgment after the conclusion of a jury trial. 451 S.W.3d 115, 119 (Tex.App.–Houston [14th Dist.] 2014, pet. denied). After the jury determined fact issues necessary to adjudicate the

declaratory judgment action, the trial court signed an order admitting one will to probate, denying probate as to two other wills, and, in light of the jury's findings relevant to the will's no-contest clause, declaring two bequests in the probated will revoked. *Id.* In *Estate of Cole*, No. 02–13–00417–CV, 2015 WL 392230, at *1–2 (Tex.App.–Fort Worth Jan. 29, 2015, no pet.) (mem. op.), *In re Estate of Florence*, 307 S.W.3d 887, 889 (Tex.App.–Fort Worth 2010, no pet.), and *Estate of Connally*, No. 02–07–00412–CV, 2008 WL 4531664, at *2 (Tex.App.–Fort Worth Oct. 9, 2008, no pet.) (mem. op.), the requests for declaratory judgment came after the wills at issue were admitted to probate.

vests immediately in the devisees and all of the person's estate that is not devised by the will vests immediately in the person's heirs at law).

Section 37.004 provides, in pertinent part, that a person interested under a will "may have determined any question of construction or validity arising under the instrument ... and obtain a declaration of rights, status, or other legal relations thereunder." Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (West 2015). Section 37.005 further provides that a "person interested" through an executor, administrator, devisee, legatee, heir, or next of kin in the administration of a decedent's estate

> may have a declaration of rights or legal relations in respect to the ... estate:
> (1) to ascertain any class of creditors, devisees, legatees, heirs, next of kin, or others;
> (2) to direct the executors, administrators, or trustees to do or abstain from doing any particular act in their fiduciary capacity;
> (3) to determine any question arising in the administration of the ... estate, including questions of construction of wills and other writings; or
> (4) to determine rights or legal relations of an independent executor or independent administrator regarding fiduciary fees and the settling of accounts.

*Id.* § 37.005 (West 2015).

■ As the supreme court has reminded us, the UDJA is a "remedial" statute with its stated purpose " 'to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations.' " *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex.1995) (citing Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b) (Vernon 1986)). And to that end, the statute expressly provides that it "is to be liberally construed." Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b) (West 2015). As observed in Harkins, there is no limitation in the UDJA's plain language requiring a will's admission to probate before the statute may be invoked.[4] 907 S.W.2d at 57.

Appellants cite to *Cowan v. Cowan*, 254 S.W.2d 862, 865 (Tex.Civ.App.–Amarillo 1952, no writ), as authority for their position that the trial court's interpretation and construction of the will was not ripe for consideration because the will was not admitted into probate at the time summary judgment was considered and granted. In *Cowan*, two siblings filed a declaratory judgment action to ascertain whether their mother possessed testamentary capacity necessary to the making of a will after they learned that she had named their brother as the principal beneficiary, rather than dividing the property among all of her children. *Id.* at 862–63. Responding to their brother's plea to the jurisdiction, in which he argued that since their mother was still alive, there was no justiciable controversy upon which to base a declaratory judgment action, the siblings

---

4. In a similar fashion, in the context of determining rights, status, or legal relations with regard to written contracts, the statute authorizes that "[a] contract may be construed either before or after there has been a breach." Tex. Civ. Prac. & Rem. Code Ann. § 37.004(b) (West 2015). The law does not require a breach to have already occurred but rather that "a justiciable controversy exists as to the rights and status of the parties and the controversy" that will be "resolved by the declaration sought." *Reynolds v. Sw. Bell Tel.*, L.P., No. 02–05–00356–CV, 2006 WL 1791606, at *5 (Tex.App.–Fort Worth June 29, 2006, pet. denied) (mem. op.) (citing *Bonham State Bank*, 907 S.W.2d at 467). A "justiciable controversy" is more than merely a "hypothetical or contingent situation," a "theoretical dispute," or a question that is "not currently essential to the decision of an actual controversy." *Id.* Instead, it is a "real and substantial controversy" that involves "a genuine conflict of tangible interests." *Id.*

argued that a controversy existed as to the validity of the will at a time when the issue could be determined "during the lifetime of all of the parties concerned." *Id.* at 863. The two siblings argued that because their mother was still living, she could "appear in court and thus assist the court and jury in determining her mental status, both now and at the time she executed the purported will." *Id.*

The court in *Cowan* concluded that the trial court lacked jurisdiction, holding,

> [S]ince Mrs. Cowan is not dead, there are no heirs and there is no will. Until she dies, the appellants have no interest in their mother's will. A will not having been presented to the court for probate, the Probate Court has no jurisdiction over it, even under the Uniform Declaratory Judgments Act, and neither the Probate Court nor the District Court[—]since a justiciable issue does not exist[—]is empowered to determine the validity of the instrument.

*Id.* at 865.

We reject Appellants' reliance on *Cowan* to support their argument that the will must be admitted to probate before any declaratory action would be ripe for consideration by the trial court, for two reasons. First, unlike the mother in *Cowan*, Rhoades is deceased. *Cf. id.* While Appellants recognize this, they point us to specific portions of the *Cowan* opinion that they contend support their position that even in circumstances where the maker of a will is dead, a trial court would lack jurisdiction until the will was admitted to

probate. The passage to which Appellants refer us states,

> Until the purported will has been offered for probate, the Probate Court does not have the power, even though the maker is dead, to entertain a declaratory judgment for the purpose of obtaining an interpretation of the instrument. *Poore v. Poore*, 201 N.C. 791, 161 S.E. 532 [ (1931) ]; *Love v. Rennie*, 254 Ala. 382, 48 So.2d 458 [ (1950) ].

In Anderson, Actions for Declaratory Judgments, p. 1297, it is said:

> 'So a declaratory or other action will not lie during the life of the testator to compel the surrender and cancellation of a will in the custody and control of a third party defendant on the ground that the testator did not possess testamentary capacity at the time of making and executing of the will. The court cannot in a declaratory action answer a purported question, even on an agreed statement of facts as to the existence, revocation, validity or construction of a will, for example, as to whether a joint and mutual will of husband and wife was revoked by the husband's marriage *after the wife's death where the will had never been probated.*'

*Id.* (emphasis added).

Despite the inclusion of this passage in the opinion, the facts in *Cowan* involved the maker of a will who was alive at the time the declaratory judgment was sought. *Id.* Indeed, much of the language in *Cowan* focuses on this very point.[5] *See id.*

---

**5.** By way of example, the *Cowan* court states:

- "Prior to the enactment of the Uniform Declaratory Judgments Act no court in Texas had the power to determine the validity of the will of a *person still alive* ...,"
- "*Until a man dies* it is not known who his heirs will be ...,"
- "[W]hether courts have the power to determine the validity of a will *during the life of*

the testator is answered by this quotation ...,"
- "[T]he courts of this State do not have the power to determine the validity of the will *of a living person*,"
- "*Because their mother is still living*, the appellants are not her heirs,"
- "*Until Mrs. Cowan's death* there cannot be, in its truest sense, a will," and

Because the consequences of the death of a testator were not germane to the case, the court's musings in *Cowan* regarding such a circumstance could not have been part of the case's holding. At best, the comments to which Appellants direct us are obiter dicta and are not authoritative for the proposition they urge here. *See Gowin v. Gowin*, 264 S.W. 529, 539–40 (Tex.Civ. App.–Fort Worth 1924), *aff'd*, 292 S.W. 211 (Tex.Comm'n App. 1927, judgm't affirmed).

Perhaps more to the point, however, is that the court in *Cowan* did not hold that the probate court lacked jurisdiction because the will was not *admitted* to probate but rather because the will had not be *presented to the court for probate.* 254 S.W.2d at 865. Here, the will was presented to the court for probate and, for a period of time prior to the granting of summary judgment, the will had actually been admitted to probate. But the order admitting the will to probate and appointing Kinler as Independent Executor was set aside by an agreed order following a motion for new trial—a motion that challenged not the admission of the will into probate, but the permanent appointment of Kinler as independent executor thereunder. After being presented to the court for probate, the will here (as opposed to Kinler's appointment) was never contested, and its temporary hiatus from probate appears to be one of inadvertence that was corrected during the pendency of this appeal, not as the result of any challenge to it or to its initial admission to probate.

While we do not find that *Cowan* supports the proposition Appellants urge, we do find the history and analysis used in *Cowan* instructive in this case:

- "[T]he instrument will not be admitted to probate *before the death of the testatrix.*" 254 S.W.2d at 863–65(emphasis added). The court concludes with "*since Mrs. Cowan is*

The [UDJA] does not, however, create any new substantive rights, nor was it so intended.... The Act is remedial in nature and procedural in character. It does not create jurisdiction in the courts over subjects in which they had no jurisdiction before the passage of the Act. It has only changed the method of exercising existing jurisdiction. Thus, a court cannot assume jurisdiction of any cause of action under the authority of the declaratory procedure where it could not have assumed jurisdiction before its enactment. *Kaufman & Ruderman, Inc. v. Cohn & Rosenberger, Inc., D.C.,* 86 F.Supp. 867 [ (1949) ].

As stated by Prof. Hodges in Revised Vol. 8, Vernon's Annotated Civil Statutes, p. XI,

'The Act does not authorize or permit an action for the mere purpose of declaring legal principles or of establishing uncertain facts. It is clear that a real controversy is necessary, that parties having conflicting legal interests are essential; that the judgment must be one which will effectively and practically settle conflicts of such legal interests of the parties.'

The Act does not contemplate declarations upon matters where the interest of the plaintiff is contingent upon the occurrence of some future event. 16 Am. Jur. 293. Before the [UDJA] may be invoked, there must be present a justiciable issue; that is, the cause of action must relate to matters which are within the jurisdiction of the court. There must be a protectable right, not a future or speculative right.

*Id.* at 864–65.

In applying *Cowan*'s history and analysis of the UDJA vis-à-vis the justiciability

*not dead,* there are no heirs and there is no will," and "[u]ntil she dies, the appellants have no interest in their mother's will." *Id.* at 865.

of matters involving rights under a will, we see that the declaratory action sought here did rise to the level of a justiciable dispute. It did not seek to merely declare legal principles or establish uncertain facts. Nor was the declaration sought speculative or contingent upon the occurrence of some future event. At the time the trial court considered and ruled upon the summary judgment motions, the parties were actively engaged in a real controversy with conflicting interests, and the objective sought by the declaratory judgment ruling was to resolve the conflict and end the controversy. Thus, the matters presented to the trial court were ripe and justiciable. And, notwithstanding the disposition on appeal, the trial court's decision did advance the resolution of the conflict between the parties.

Because the temporary removal of the will from probate did not render the trial court's decision advisory or moot under the circumstances presented here, we must reach the merits of Appellants' complaints.

**B. Summary Judgment**

■ In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex.2009). We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). Summary judgment is proper in cases in which the parties do not dispute the relevant facts. *Havlen v. McDougall*, 22 S.W.3d 343, 345 (Tex.2000); *see G & H Towing Co. v. Magee*, 347 S.W.3d 293, 296–97 (Tex.2011) ("The purpose of a summary judgment is to 'provide a method of summarily terminating a case when it clearly appears that only a question of law is

involved and that there is no genuine issue of [material] fact.'") (quoting *Gaines v. Hamman*, 163 Tex. 618, 358 S.W.2d 557, 563 (1962)). When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *Mann Frankfort*, 289 S.W.3d at 848. The reviewing court should render the judgment that the trial court should have rendered. *See Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex.2009); *Mann Frankfort*, 289 S.W.3d at 848.

■ As this court has previously stated with regard to will construction,

The cardinal rule for construing a will is that the testator's intent must be ascertained by looking at the language and provisions of the instrument as a whole, as set forth within its four corners. The question is not what the testator intended to write, but the meaning of the words he actually used. Terms used are to be given their plain, ordinary, and generally accepted meanings unless the instrument itself shows them to have been used in a technical or different sense.

If possible, all parts of the will must be harmonized, and every sentence, clause, and word must be considered in ascertaining the testator's intent. We must presume that the testator placed nothing meaningless or superfluous in the instrument. Where practicable, a latter clause in a will must be deemed to affirm, not to contradict, an earlier clause in the same will.

Whether a will is ambiguous is a question of law for the court. A term is not ambiguous merely because of a simple lack of clarity or because the parties proffer different interpretations of a term. Rather, a will is ambiguous only

when the application of established rules of construction leave its terms susceptible to more than one reasonable meaning. If the court can give a certain or definite legal meaning or interpretation to the words used, the will is unambiguous, and the court should construe it as a matter of law.

*Steger v. Muenster Drilling Co.*, 134 S.W.3d 359, 372–73 (Tex.App.–Fort Worth 2003, pet. denied) (citations omitted).

Appellants contend that the trial court misconstrued article III of the will.

Article III of the will states as follows:

### III.

### DISPOSITION OF ESTATE

A. I give all of my interest in the real property and the improvements thereto which constitute my residential homestead at the time of my death to Glen Rhoades in equal shares.

B. I give, devise and bequeath all of my personal property to Glen Rhoades in equal shares.

C. I give, devise and bequeath all of the rest of my estate of whatsoever kind and wheresoever situated as follows to Glen Rhoades. In the event that Glen Rhoades should predecease me, his portion shall be distributed to ELISE KINLER for the benefit of Elise and Michael Kinler. In the event that Elise Kinler should predecease me, then said portion shall be distributed to Michael Kinler.

D. Any other property of mine that has not been disposed of under any other provision of this Will shall go and be distributed to my heirs-at-law. Their identity and respective shares shall be determined in all respects as if my death had occurred immediately following the happening of the event requiring such distribution, and according to the laws of Texas then in force governing the distribution of the estate of an intestate.

The parties agree that Glen Rhoades predeceased his daughter and that the will is unambiguous.

Kinler moved for summary judgment, arguing that "his portion" under Paragraph C meant Glen's entire "portion" under Article III because the entire estate could be categorized as either real or personal property under Paragraphs A and B and because in Article V, the testator again referenced Glen's "portion" to be used to create a trust for him if he was alive at the time of her death. In their competing motion for summary judgment, Appellants argued that all of Rhoades's property passed to them under the antilapse statute in estates code section 255.152 because there was no language in Paragraph A or B that stated what was to occur in the event that Glen predeceased his daughter. They further argued that under the estates code, the bequests in Paragraphs A, B, and C passed to the "residuary estate" in accordance with Paragraph D's plain meaning because the limiting language "as follows" in Paragraph C did not describe any property.

On appeal, however, Appellants offer an alternative argument that they argue harmonizes all four paragraphs in Article III:

[t]he only logical interpretation … is that the bequests in paragraphs A and B lapse, causing those bequests (the Decedent's "residential homestead" and personal property) to fall into paragraph D—the residuary clause. Paragraph C would then pass all of Decedent's other real property to Appellee. No other interpretation of paragraph D satisfies the "harmony" requirement articulated in *Steger*.

In support of this argument, Appellants point out that, according to the Inventory filed in the probate proceeding, Rhoades's estate contains property that would fall under Paragraph C, a parcel of non-homestead real property that was not covered by Paragraph A or B. We agree with this interpretation of the will.

Estates code section 255.152, "Failure of Devise; Effect on Residuary Estate," provides in subsection (a), "Except as provided by Sections 255.153 and 255.154,[6] if a devise, other than a residuary devise, fails for any reason, the devise becomes a part of the residuary estate." Tex. Est. Code Ann. § 255.152 (West 2014). This section applies unless the testator's will provides otherwise. *Id.* § 255.151 (West 2014).

▮ Paragraph A gave "equal shares" of Rhoades's residential homestead to her father. This clause lapsed because Glen predeceased her, and the residential homestead fell into the residuary per estates code section 255.152(a). *See id.* § 255.152(a). Paragraph B gave "equal shares" of all of Rhoades's personal property to her father, and this clause lapsed too because of Glen's having predeceased her, dropping all of Rhoades's personal property into the residuary. *See id.*

Paragraph C gave Rhoades's father "all of the rest of [her] estate of whatsoever kind and wheresoever situated as follows" unless he predeceased her. While the clause does not specify *what* property would pass under this paragraph, after subtracting the residential homestead real estate and all of her personal property, the only property remaining would be non-homestead real estate. *See San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 640

(Tex.2000) (explaining the distinction between real property—"land and generally whatever is erected or growing upon or affixed to land"—and personal property— "defined broadly to include everything that is subject to ownership not falling under the definition of real estate"); *see also* Tex. Est. Code Ann. § 22.028 (West 2014) (defining "personal property" as including an interest in goods, money, a chose in action, evidence of a debt, and a real chattel), § 22.030 (West 2014) (defining "real property" as including estates and interests in land, whether corporeal, incorporeal, legal, or equitable but excluding a real chattel). Included in the summary judgment evidence was the inventory prepared by Kinler as temporary administrator, which shows a parcel of real property designated as "Parcel #2." "Parcel #2" appears to be the only non-residential homestead real property and non-personal property remaining in Rhoades's estate, but to the extent that Rhoades owned other non-residential homestead real estate at the time of her death, that property would be conveyed pursuant to Paragraph C as well.

▮ We hold that because Rhoades's father predeceased her, the gifts attempted under Paragraphs A and B failed and that property fell into the residuary clause in Paragraph D. However, since Paragraph C expressly provided that if Glen predeceased Rhoades, "his portion" should be distributed to Kinler, the property bequeathed under Paragraph C did not lapse, but rather passed to Kinler. To hold otherwise would require editing, deleting, modifying, or ignoring altogether some of the paragraphs at issue, which we may not do.[7] *See Steger*, 134 S.W.3d at 372–73 (setting out rules of will construction).

**6.** Neither section 255.153, which governs a devisee who is a descendant of the testator or the testator's parent and who is deceased at the time the will is executed, nor section 255.154, which governs devisees under class

gifts, applies here. *Cf. id.* §§ 255.153–.154 (West 2014).

**7.** Characterizing Paragraph C as a residuary clause, as Kinler urges us to do, would force

For these reasons, we sustain Appellants' first issue and part of their second issue regarding the denial of their motion for summary judgment.

## IV. Conclusion

Having sustained Appellants' first issue and part of their second issue, we reverse the trial court's judgment and remand the case to the trial court to enter a declaratory judgment consistent this determination and our holding.

WALKER, J., filed a concurring and dissenting opinion.

## CONCURRING [1] AND DISSENTING OPINION

SUE WALKER, Justice, Concurring and Dissenting

### I. INTRODUCTION

This is an appeal from the trial court's summary judgment construing the will of the decedent, Glenda Rhoades. Because the Majority Opinion fails to properly apply the rules of will construction to Rhoades's will and construes Rhoades's will contrary to her expressed intent, I dissent.

### II. BACKGROUND

Rhoades signed a will in which she devised all of her interest in her residential homestead, all of her personal property, and all of the rest of her estate to her father Glen; however, if her father predeceased her—as is the case here—she provided that "his portion" was to be distributed to Appellee Elise Kinler for the benefit of Kinler and Kinler's son. Rhoades then provided that any other property that had not been disposed of under any other provision of her will should be distributed to her heirs-at-law, who are Appellants Norma Anderson, Paula Gilleland, Gerald Don Marrs, Joann Dycus, and Vicki George.

Rhoades's will provided for an independent administration and named Kinler as the independent executor. After Rhoades's death, Kinler filed an application to probate Rhoades's will. Appellants filed a petition for declaratory judgment, seeking a declaration that Rhoades's estate passed to Appellants under the "residuary clause" because the distributions to Rhoades's father had lapsed. Kinler likewise filed a declaratory-judgment petition, requesting a declaration that the entire estate passed to her based on the construction of the will as a whole. Kinler and Appellants filed competing motions for summary judgment, as well as responses. The trial court signed an order granting Kinler's summary-judgment motion and denying Appellants' summary-judgment motion. Appellants perfected this appeal and raise two issues: the trial court erred by granting Kinler's motion for summary judgment and erred by denying Appellants' motion for summary judgment.

### III. THE TRIAL COURT DID NOT ERR BY GRANTING KINLER'S MOTION FOR SUMMARY JUDGMENT AND BY DENYING APPELLANTS' MOTION FOR SUMMARY JUDGMENT

#### A. Standard of Review

Absent ambiguity, the construction of a will is a matter of law.[2] *Penland v. Agnich*, 940 S.W.2d 324, 326 (Tex.App.–Dallas 1997, writ denied). Accordingly, we review

---

us to ignore Paragraph D entirely, rendering it meaningless.

**1.** I concur with the Majority Opinion's disposition of Appellants' jurisdictional issue.

**2.** Kinler and Appellants agree that Rhoades's will is unambiguous.

de novo the question of the construction of an unambiguous will. *See Harris v. Hines*, 137 S.W.3d 898, 904 (Tex.App.–Texarkana 2004, no pet.). In construing a will, our objective is to discern and effectuate the testatrix's intent as reflected in the instrument as a whole, giving effect to all its parts. *Hysaw v. Dawkins*, 483 S.W.3d 1, 7 (Tex.2016); *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 639 (Tex.2000); *Gee v. Read*, 606 S.W.2d 677, 680 (Tex.1980). The intent must be drawn from the will, not the will from the intent. *Hysaw*, 483 S.W.3d at 7. Thus, we focus not on what the testatrix intended to write but on the meaning of the words she actually used. *Id.* Ascertaining a testatrix's intent from the four corners of a will requires careful examination of the words used. *Id.* If possible, all parts of the will must be harmonized, and every sentence, clause, and word must be considered in ascertaining the testatrix's intent. *See Welch v. Straach*, 531 S.W.2d 319, 322 (Tex.1975); *Steger v. Muenster Drilling Co.*, 134 S.W.3d 359, 372 (Tex.App.–Fort Worth 2003, pet. denied). We presume that the testatrix placed nothing superfluous or meaningless in her will and that she intended every word to play a part in the disposition of her property. *See Steger*, 134 S.W.3d at 372; *Cooley v. Williams*, 31 S.W.3d 810, 812 (Tex.App.–Houston [1st Dist.] 2000, no pet.).

### B. Rhoades's Will

Article III and Article V of Rhoades's will provide, in pertinent part, as follows.[3]

### III.

### DISPOSITION OF ESTATE

A. I give all of my interest in the real property and the improvements thereto which constitute my residen-

---

3. Rhoades's entire will is attached hereto as

tial homestead at the time of my death to Glen Rhoades in equal shares.

B. I give, devise[,] and bequeath all of my personal property to Glen Rhoades in equal shares.

C. I give, devise[,] and bequeath all of the rest of my estate of whatsoever kind and wheresoever situated as follows to Glen Rhoades. In the event that Glen Rhoades should predecease me, *his portion* shall be distributed to ELISE KINLER for the benefit of Elise and Michael Kinler. In the event that Elise Kinler should predecease me, then said portion shall be distributed to Michael Kinler.

D. Any other property of mine that has not been disposed of under any other provision of this Will shall go and be distributed to my heirs-at-law. Their identity and respective shares shall be determined in all respects as if my death had occurred immediately following the happening of the event requiring such distribution, and according to the laws of Texas then in force governing the distribution of the estate of an intestate.

. . . .

### V.

### CONTINGENT TRUSTS

. . . .

TRUST FOR GLEN RHOADES: In the even[t] that GLEN RHOADES is, at the time of my death, a resident of a residential care home, nursing home, assisted living facility or similar facility, if and in that event I direct that *his portion as described in Article III above* shall be distributed to my Trustee, IN TRUST NEVERTHELESS, for the

Appendix A.

uses and purposes hereinafter set forth. My Trustee shall not distribute such property outright, but instead my Trustee shall hold all of such property in separate trust for the supplemental needs of GLEN RHOADES as follows:

A. This trust shall be titled The Glen Rhoades Supplemental Needs Trust. I direct that the trustee shall provide for the supplemental needs of Glen Rhoades without interfering with or reducing the benefits Glen Rhoades would be entitled to receive from any state or federal agency and to maximize the benefits available to Glen Rhoades. I intend that the assets remaining in trust for Glen Rhoades be used to supplement other benefits that Glen Rhoades might be entitled to receive and explicitly not be used for Glen Rhoades's basic support needs until the death of Glen Rhoades.

B. Upon the death of Glen Rhoades, the remainder, if any, shall be distributed to Elise Kinler. In the event that Elise Kinler has predecease[d] the final distribution, said remainder shall be distributed to Michael Kinler. [Emphasis added.]

## C. The Parties' Positions

### 1. Appellants' Position

Appellants assert that because Kinler is not mentioned in Article III, Paragraphs A or B, the gifts to Glen identified in those paragraphs "lapsed." Accordingly, Appellants argue that these lapsed gifts passed to them under the "residuary clause" set forth in Article III, Paragraph D. Appellants contend that "[t]he issue before this Court is to determine which paragraph— Article III C, or Article III D—is the true residuary clause in Decedent's Will." Appellants admittedly exclude Article V from their analysis of Rhoades's will.[4]

### 2. Kinler's Position

Kinler asserts that "this is not a complicated will dispute." She argues that the will named one beneficiary, Rhoades's father Glen, and named her as the first alternate or contingent beneficiary. According to Kinler, Glen was to receive all of Rhoades's estate as his "bucket," and then his "bucket" was to pass to Kinler if he predeceased Rhoades. Kinler points out that Article III, Paragraph C gifts to her Glen's "portion" after identifying what constituted Glen's portion in Paragraphs A, B, and C. She further contends that Article V specifically explains that Glen's "portion" means his entire collective interest. Kinler argues that applying the rules of will construction and construing the will as a whole, she is entitled to all of Rhoades's interest in the residential homestead (Paragraph A), all of Rhoades's personal property (Paragraph B), and all of the rest of Rhoades's estate (Paragraph C) because these gifts—which are Glen's portion under Rhoades's will—passed over to her as the first named contingent beneficiary of Glen's portion if Glen predeceased Rhoades. Kinler contends that Article III, Paragraph D addresses disposition of Rhoades's estate, including Glen's portion, in the event the contingent beneficiaries named in the preceding paragraphs predeceased Rhoades; because she, Kinler, is a contingent beneficiary who did not prede-

---

4. Appellants further argue:

There is no language in Article V (or elsewhere in the Will) which directs this Court to use the clarity of Article V to help bolster [Kinler's] alleged entitlement under Article III. . . . Because Glen Rhoades predeceased the Decedent, the only provision of the Will which determines the disposition of Decedent's estate is Article III. [Kinler's] pleas to the trial court to treat Article III as if it contained the words found in Article V should have been ignored.

cease Rhoades, Kinler asserts Paragraph D was not triggered.

## D. De Novo Construction of Rhoades's Will Applying the Rules of Will Construction

### 1. The Will is Construed as a Whole to Effectuate the Testatrix's Intent

The cardinal rule of will construction is that the entire will is examined to determine the testatrix's intent. *See Hysaw*, 483 S.W.3d at 7 ("Today, we reaffirm our commitment to a holistic approach aimed at ascertaining intent from all words and all parts of the conveying instrument"); *Heller v. Heller*, 114 Tex. 401, 410, 269 S.W. 771, 774 (1925) ("[A]n elementary rule of construction with reference to wills is that the testator's intention is to be collected from the whole of the will taken together, and not from detached portions."); *see also Lang*, 35 S.W.3d at 639; *Bergin v. Bergin*, 159 Tex. 83, 89, 315 S.W.2d 943, 946–47 (1958); *Disabled Am. Veterans v. Mullin*, 773 S.W.2d 408, 410 (Tex.App.–San Antonio 1989, no writ); George W. Thompson, 2 *Construction and Interpretation of Wills* § 41 (1928) (describing "the first rule of construction" with respect to wills as ascertaining the intention of the testator from the four corners of the will).

An examination of Rhoades's entire will shows her intent was (1) to leave her entire estate to her father Glen, either directly as set forth in Article III or by means of a trust as set forth in Article V if Glen resided in a nursing home at the time of her death, and (2) to leave Glen's portion of her estate, i.e., her entire estate as set forth in Article III, to Kinler if Glen predeceased her or to leave pursuant to

Article V the entire balance remaining in Glen's trust to Kinler upon Glen's death. Thus, Rhoades's desired testamentary scheme, as ascertained from her entire will, was to name her father Glen as the primary beneficiary of her entire estate, to name Kinler the first alternate or contingent beneficiary, to name Kinler's son as the second alternate or contingent beneficiary, and to provide that any undisposed-of property would be distributed to her heirs-at-law, i.e., according to the laws of intestacy.

The Majority Opinion does not examine Rhoades's entire will, the four-corners of the will, to determine her intent or her testamentary scheme as a whole. Contrary to this cardinal rule of will construction, as urged by Appellants, the Majority Opinion views Article III in a vacuum without any effort to reconcile it with Rhoades's intent as expressed in Article V—that "his [Glen's] portion" of her estate includes all of the property identified in Article III: the real property and improvements constituting Rhoades's residential homestead, Rhoades's personal property, and all of the rest of Rhoades's estate of whatsoever kind and wheresoever situated. *But see Hysaw*, 483 S.W.3d at 7 (requiring intent to be determined from examination of all parts of will); *Lang*, 35 S.W.3d at 639 (same); *Bergin*, 159 Tex. at 89, 315 S.W.2d at 946–47 (same); *Heller*, 114 Tex. at 410, 269 S.W. at 774 (same). To the extent Article III, Paragraph C standing alone could somehow possibly be construed as limiting Glen's portion to only "the rest of [Rhoades's] estate of whatsoever kind and wheresoever situated,"[5] that possible

---

5. I do not believe such a construction is possible in any event. To construe the phrase "his portion" in Article III as relating solely to the property described in Paragraph C, the Majority Opinion essentially redrafts Paragraph

C to provide a limitation Rhoades omitted from her will. The construction propounded by the Majority Opinion rewrites Paragraph C to add the italicized language: "I give, devise and bequeath all of the rest of my estate of

stand-alone construction of Paragraph C cannot destroy Rhoades's explicit expressed intention set forth in the remaining portion of her will (Article V) as to what constitutes Glen's portion of her estate. *See, e.g., Bergin,* 159 Tex. at 89, 315 S.W.2d at 947 ("We have examined the will in the light of these cardinal rules and hold that the first paragraph of the will, which, standing alone would leave an absolute fee title to respondent, cannot destroy the effect of the remaining portions of the will, which plainly provide that respondent shall receive the benefits of the stock only until she remarries or dies."). The Majority Opinion fails to give effect to Rhoades's intent expressed in her will that her father Glen, as *his portion* of her estate, take all of the real property and improvements constituting her residential homestead, her personal property, and all of the rest of her estate of whatsoever kind and wheresoever situated either directly or via a trust if he resided in a nursing home at the time of her death and that if Glen predeceased her, *his portion* be given to Kinler.

## 2. Same Term Is to be Given Same Meaning

"When the testator uses the same words in different parts of the will with reference to the same subject matter, we presume he intended the words to have the same meaning unless the context indicates the testator used the words in a different sense." *Eisen v. Capital One, Nat'l Ass'n,* 232 S.W.3d 309, 313 (Tex.App.–Beaumont 2007, pet. denied); *see also Weathers v. Robertson,* 331 S.W.2d 87, 90 (Tex.Civ. App.–Beaumont 1959, writ ref'd n.r.e.) (stating that a term used in a will should

whatsoever kind and wheresoever situated as follows to Glen Rhoades. In the event that Glen Rhoades should predecease me, his portion *[as described solely in the preceding sentence]* shall be distributed to ELISE KINLER for the benefit of Elise and Michael Kinler."

be construed as having the same meaning throughout the will); 2 *Construction and Interpretation of Wills* § 78 (explaining that "words or phrases occurring more than once in a will, or the same words used in different parts of the same will, are presumptively used in the same sense and are to receive the same construction").

The second sentence of Paragraph C of Article III provides, "In the event that Glen Rhoades should predecease me, *his portion* shall be distributed to ELISE KINLER for the benefit of Elise and Michael Kinler." [Emphasis added.] Rhoades's intent in using the term "his portion" in Paragraph C of Article III is clarified by her use of the exact same term in Article V. The term "his portion" as used in Article V straightforwardly encompasses as Glen's portion of Rhoades's estate, all of Rhoades's "interest in the real property and the improvements thereto which constitute my residential homestead[,]" "all of [Rhoades's] personal property,]" and "all of the rest of [Rhoades's] estate of whatsoever kind and wheresoever situated." The term "his portion" in Paragraph C of Article III should be given the same meaning that same term has by express definition in Article V. *See Eisen,* 232 S.W.3d at 314 (construing the term "beneficiary" in both Article VI and Article IX of testator's will to have the same definition pursuant to the definition testator provided for the term in Article VI).

The Majority Opinion, however, wholly ignores Article V and fails to apply the rule of will construction that the same term used in the same will should be given the same meaning. Consequently, under

[Emphasis added.] *See Lang,* 35 S.W.3d at 639 (stating that courts must not redraft wills to vary or add provisions "under the guise of construction of the language of the will" to reach a presumed intent).

the Majority Opinion's holding, the term "his portion" has two completely different meanings in the will:

- In Article III: per the Majority Opinion's holding, "his portion" consists solely of the property described in Paragraph C in Article III (i.e., a parcel of non-homestead real property).
- In Article V (ignored by the Majority Opinion): per the express language of the will, "his portion" consists of all property devised to Glen as described in Article III (i.e., all of Rhoades's interest in the real property and improvements thereto constituting her residential homestead, all of her personal property, and all of the rest of her estate of whatsoever kind and wheresoever situated).

*But see id.* (holding that when testator uses same words in different parts of same will, words presumed to have same meaning); *Weathers*, 331 S.W.2d at 90 (stating that term used in will should be construed as having same meaning throughout will).

### 3. A Will's Internal Formatting Cannot Thwart the Testatrix's Intent

"[A] will is not to be read so as to contradict itself if its apparent contradictions can be reconciled by bringing the various clauses together and deducing a consistent interpretation from the whole context." *Jones' Unknown Heirs v. Dorchester*, 224 S.W. 596, 601 (Tex.Civ.App.–Amarillo 1920, writ dism'd w.o.j.); *see also Hysaw*, 483 S.W.3d at 13 (explaining that "apparent inconsistencies or contradictions must be harmonized, to the extent possible, by construing the instrument as a whole"). Appellants' position, adopted by

the Majority Opinion, stems primarily, if not exclusively, from the labeling of the paragraphs in Article III of Rhoades's will as Paragraphs A, B, C, and D. That is, Appellants' position is not based on the actual *words* of Rhoades's will but on the internal Paragraph A, B, C, and D formatting of Rhoades's will. Based on the will's internal formatting's use of the letters A, B, C, and D, Appellants treat each of these paragraphs as separate stand-alone provisions.[6] But reading the actual words of these four paragraphs together, it is clear that Rhoades intended to name her father Glen as the will's beneficiary and to name Kinler as the first alternate or contingent beneficiary. Simply removing the internal A, B, C, and D paragraph formatting makes this obvious:

I give all of my interest in the real property and the improvements thereto which constitute my residential homestead at the time of my death to Glen Rhoades in equal shares. I give, devise[,] and bequeath all of my personal property to Glen Rhoades in equal shares. I give, devise[,] and bequeath all of the rest of my estate of whatsoever kind and wheresoever situated as follows to Glen Rhoades. In the event that Glen Rhoades should predecease me, *his portion* shall be distributed to ELISE KINLER for the benefit of Elise and Michael Kinler. In the event that Elise Kinler should predecease me, then said portion shall be distributed to Michael Kinler. Any other property of mine that has not been disposed of under any other provision of this Will shall go and be distributed to my heirs-at-law. Their

6. Appellants assert the following:

Kinler is mentioned only in Section C. Only Glen Rhoades is mentioned in Sections A and B, and he failed to survive the Decedent. Unambiguously, Decedent failed to include language in either Section A or Section B

which would cause those lapsed bequests to pass to Kinler. Instead, Decedent left a very unambiguous residuary bequest in Section D that left all of the "lapsed" gifts to the Heirs-at-Law.

identity and respective shares shall be determined in all respects as if my death had occurred immediately following the happening of the event requiring such distribution, and according to the laws of Texas then in force governing the distribution of the estate of an intestate. [Emphasis added.]

See Welch, 531 S.W.2d at 322 ("[I]t is always permissible, in fact proper, to look beyond mere grammatical form to what may be termed the internal evidence of the writer's intention."); cf. Dorchester, 224 S.W. at 602 (construing seventh paragraph of will by looking to eighth and ninth paragraphs of will). By adopting Appellants' contention that Paragraphs A, B, C, and D of Article III are standalone provisions that cannot be read in connection with one another, the Majority Opinion improperly elevates grammatical form over testamentary-scheme substance. See McMurray v. Stanley, 69 Tex. 227, 230, 6 S.W. 412, 413 (1887) ("In construing the will, all its provisions should be looked to, for the purpose of ascertaining what the real intention of the testatrix was; and ... any particular paragraph of the will which, considered alone, would indicate a contrary intent, must yield to the intention manifested by the whole instrument.").

### 4. Contingent Beneficiaries Take Over Residuary Beneficiaries

Article III of Rhoades's will sets forth a list of contingent beneficiaries—Elise Kinler first and then Michael Kinler—who would take Glen's portion of her estate in the event Glen predeceased her. Notably, Rhoades utilized the same disposition for the remainder of the trust in Article V. Because Rhoades listed contingent beneficiaries for Glen's portion of the estate and because the named contingent beneficiaries did not predecease Rhoades, there are no failed or lapsed gifts; thus, contrary to Appellants' position, the Anti-Lapse Stat-

ute does not apply. See Rossi v. Rossi, 448 S.W.2d 162, 164 (Tex.Civ.App.–Houston [14th Dist.] 1969, writ ref'd n.r.e.) ("The [Anti-Lapse Statute] is simply inapplicable where there is a valid testamentary disposition. as a gift over and a legatee or devisee has predeceased the testator."). And this construction of Article III as containing no failed or lapsed gifts does not render Paragraph D meaningless, as the Majority Opinion states in a footnote. Paragraph D has a purpose: it acts as the residuary clause and provides for the disposition of the estate if the named contingent beneficiaries predeceased Rhoades. Based on the facts here, Paragraph D was not triggered because at least one of the named contingent beneficiaries—Kinler— was alive at the time of Rhoades's death. Simply because a provision is not triggered does not render it "meaningless." Cf. In re M.M.M., 428 S.W.3d 389, 396 (Tex.App.– Houston [14th Dist.] 2014, pet. denied) (holding statutory provision was not meaningless because it might rarely come into play; as long as there was any event that would trigger the need for the provision, it was not meaningless).

The mere fact that Article III, Paragraph D sets forth a residuary clause in favor of Appellants, Rhoades's heirs-at-law, does not detract from Rhoades's designation of contingent beneficiaries. See, e.g., Calloway v. Estate of Gasser, 558 S.W.2d 571, 576 (Tex.Civ.App.–Tyler 1977, writ ref'd n.r.e.) (holding that when testator designated husband as primary beneficiary and others as contingent beneficiaries in event husband predeceased her and couple then divorced, contingent beneficiaries were entitled to take rather than residuary beneficiaries—even though husband was not dead but instead was only statutorily prohibited from taking—because by providing contingent beneficiaries, will reflected testator's intent that

they take over residuary beneficiaries). Nor can a residuary clause require or place "a construction on a previous clause in order to create a residue" as Appellants and the Majority Opinion do here. *See 2 Construction and Interpretation of Wills* § 90. Appellants and the Majority Opinion construe the provisions of Article III in order to create the existence of a residuary clause under Paragraph D, claiming otherwise Paragraph D would be superfluous, instead of looking to Rhoades's intent that Kinler as a contingent beneficiary takes Glen's portion, regardless of whether that taking left anything for the residuary beneficiaries. *See Calloway*, 558 S.W.2d at 576.

## IV. CONCLUSION

Because, as set forth above, applying the well-settled rules of will construction to Rhoades's will, Kinler established as a matter of law that in the event that Glen predeceased Rhoades, Rhoades intended for Kinler to receive "his portion"—which consisted of the real property and improvements thereon comprising Rhoades's residential homestead, Rhoades's personal property, and any other property owned by Rhoades at her death—I would hold that the trial court did not err by granting Kinler's motion for summary judgment on her request for a declaration that Rhoades's entire estate passed to her, and I would overrule Appellants' first issue. Similarly, I would hold that the trial court did not err by denying Appellants' cross-motion for summary judgment; I would overrule Appellants' second issue. Accordingly, I would affirm the trial court's order granting the summary-judgment motion filed by Kinler and denying the cross-motion for summary judgment filed by Appellants. Because the Majority Opinion holds otherwise, I respectfully dissent.

APPENDIX A

# LAST WILL AND TESTAMENT

## OF

## GLENDA RHOADES

I, GLENDA RHOADES, of the County of PARKER and the State of Texas, being in good health, of sound and disposing mind and memory, do make and declare this instrument to be my Last Will and Testament, hereby expressly revoking all former Wills and Codicils made by me at any time heretofore, and intending hereby to dispose of all the property of whatever kind and wherever situated which I own, or in which I have any kind of interest at the time of my death.

### I.
### IDENTITY OF THE FAMILY

At the time of the execution of this Will, I am not married and I have no children.

### II.
### PAYMENT OF EXPENSES

I direct that all the expenses of my last illness, my funeral expenses, and my just personal debts, including any inheritance taxes, transfer taxes, and estate taxes which may be levied by the United States Government or by any state by reason of my death, shall be paid by my Independent Executor out of the residue of my estate as soon as conveniently may be done; provided that my Independent Executor, in such Executor's sole discretion, may distribute from time to time any real or personal property in my estate which at my death is subject to a lien securing an indebtedness upon it without discharging said indebtedness, if in my Independent Executor's judgment, the condition of my estate so requires. The distributee shall then be considered as having received my estate's equity in the property.

### III.
### DISPOSITION OF ESTATE

A.    I give all of my interest in the real property and the improvements thereto which constitute my residential homestead at the time of my death to Glen Rhoades in equal shares.

B.    I give, devise and bequeath all of my personal property to Glen Rhoades in equal shares.

C.    I give, devise and bequeath all of the rest of my estate of whatsoever kind and wheresoever situated as follows to Glen Rhoades. In the event that Glen Rhoades

INITIALS: _____

should predecease me, his portion shall be distributed to ELISE KINLER for the benefit of Elise and Michael Kinler. In the event that Elise Kinler should predecease me, then said portion shall be distributed to Michael Kinler.

D.     Any other property of mine that has not been disposed of under any other provision of this Will shall go and be distributed to my heirs-at-law. Their identity and respective shares shall be determined in all respects as if my death had occurred immediately following the happening of the event requiring such distribution, and according to the laws of Texas then in force governing the distribution of the estate of an intestate.

## IV.
## DEFINITION OF SURVIVAL:

Any legatee, devisee, donee, person or beneficiary with respect to all or any part of my estate who shall not survive until ninety (90) days after the date of my death, or until this Will is probated, whichever occurs earlier, shall be deemed to have predeceased me, and shall be treated for all purposes herein as though such person had predeceased me.

## V.
## CONTINGENT TRUSTS

TRUST FOR BENEFICIARIES UNDER THE AGE OF 25:  In the event that any beneficiary has not reached the age of twenty-five (25) years, then in such event I give, devise and bequeath the share or shares of such beneficiary to my Trustee, IN TRUST NEVERTHELESS, for the uses and purposes hereinafter set forth. My Trustee shall not distribute such property outright, but instead my Trustee shall hold all of such property in separate trusts for the benefit of each such individual beneficiary and the records of my Trustee shall be kept accordingly. Each trust created by this Article shall be known by the name of the individual beneficiary for whom it is created (hereafter called "Beneficiary" of such trust), which individual shall be the primary beneficiary thereof.

A.     My Trustee shall not distribute to or for the benefit of each beneficiary, any of the income, nor corpus of each separate per stirpes share or trust created for that particular beneficiary until said beneficiary reaches the age of twenty-five years.

B.     Any income or corpus not so distributed or used shall be separately accumulated for each of my beneficiaries or their issue, and the separate per stirpes share or trust turned over to said beneficiary when he or she reaches the age of twenty-five (25) years, at which time my Trustee shall transfer, convey, deliver and pay over to said beneficiary, FREE FROM TRUST, all of the property then constituting his or her share of the trust estate.

C.     If any beneficiary of the trust shall die before complete distribution of his or her share, then upon the death of such beneficiary the share of such beneficiary as then constituted shall be distributed equally to said deceased beneficiary's children or his or her issue, per stirpes, as provided in Sections A and B above. If said deceased beneficiary has no living children then that beneficiary's

INITIALS: _____

portion shall be distributed equally among the then surviving residual beneficiaries.

D.    Any share or portion of a share of any trust created hereunder or any other property of mine that has not been disposed of under any other provision of this Will shall go and be distributed to my heirs at law.

TRUST FOR GLEN RHOADES:  In the event that GLEN RHOADES is, at the time of my death, a resident of a residential care home, nursing home, assisted living facility or similar facility, if and in that event I direct that his portion as described in Article III above shall be distributed to my Trustee, IN TRUST NEVERTHELESS, for the uses and purposes hereinafter set forth.  My Trustee shall not distribute such property outright, but instead my Trustee shall hold all of such property in separate trust for the supplemental needs of GLEN RHOADES as follows:

A.    This trust shall be titled The Glen Rhoades Supplemental Needs Trust.  I direct that the trustee shall provide for the supplemental needs of Glen Rhoades without interfering with or reducing the benefits Glen Rhoades would be entitled to receive from any state or federal agency and to maximize the benefits available to Glen Rhoades.  I intend that the assets remaining in trust for Glen Rhoades be used to supplement other benefits that Glen Rhoades might be entitled to receive and explicitly not be used for Glen Rhoades's basic support needs until the death of Glen Rhoades.

B.    Upon the death of Glen Rhoades, the remainder, if any, shall be distributed to Elise Kinler.  In the event that Elise Kinler has predecease the final distribution, said remainder shall be distributed to Michael Kinler.

## VI.
## APPOINTMENT OF TRUSTEE

I nominate, constitute and appoint ELISE KINLER, to act as Trustee of the trust created in Article V herein.  In the event that ELISE KINLER, shall predecease me or fail or refuse to qualify, or die, resign, or become unable to serve as Trustee during the administration of such trust, I hereby nominate, constitute and appoint NORMA ANDERSON to act as Trustee, and all of the powers, duties and responsibilities granted and imposed upon ELISE KINLER shall devolve upon and be exercised by NORMA ANDERSON.

## VII.
## TRUSTEE POWERS

The trusts created or arising by virtue of this, my Last Will and Testament shall be governed by and administered in accordance with the following provisions:

A.    The Trustee during the continuation of each trust shall have the sole and complete right to possess, control, manage, and dispose of each trust estate and the said Trustee shall have the powers, rights, responsibilities and duties given to or imposed upon trustees by the Texas Trust Code as such Code now exists.

B.    The Trustee shall at all times keep proper records and books of accounts which shall be open to the inspection of the beneficiaries at all reasonable times.

INITIALS:

C.     The Trustee shall act without bond of any kind, and shall be liable only for gross negligence, fraud or defalcation.

D.     The Trustee shall have full power, in the Trustee's discretion, to litigate, compromise, adjust and settle all claims arising out of or in connection with the trust and property of the trust, and the Trustee may employ counsel and other agents in the discharge of duties and determine and pay them a reasonable compensation.

E.     The Trustee shall be entitled to pay out of the trust estate or to be reimbursed for any and all legitimate expenses incurred in the management of the trust estate.

F.     The Trustee shall have the sole discretion to determine what is income or corpus of each respective trust, and shall apportion and allocate all receipts, credits, disbursements, expenses, and charges to income or corpus as the Trustee shall deem proper.

G.     The Trustee may resign by sending an acknowledged written notice to the trust beneficiaries thirty (30) days prior to resignation.

H.     As compensation for his services hereunder, my Trustee or his successor shall be entitled to charge the same fees customarily charged for similar services in other trusts at the time the services are rendered.

## VIII.
## APPOINTMENT OF EXECUTOR

I hereby nominate, constitute and appoint ELISE KINLER, as Independent Executor of my estate. In the event that ELISE KINLER, shall predecease me or fail or refuse to qualify, or die, resign, or become unable to serve during the administration of my estate, I hereby nominate, constitute and appoint NORMA ANDERSON, as Independent Executor, and all the powers, duties and responsibilities granted and imposed upon ELISE KINLER shall devolve upon and be exercised by NORMA ANDERSON.

If any individual Independent Executor or Executrix becomes unable to discharge his or her duties under this Will because of accident, physical or mental illness or deterioration, or other cause and does not resign, then upon certification in a form sufficient for the recording of a deed in the State of Texas by two medical doctors (neither of whom is a beneficiary under this Will) affirming that each has examined the Independent Executor or Executrix and that each has concluded, based on such examination, that the Independent Executor or Executrix is unable to discharge his or her duties under this Will, the Independent Executor or Executrix shall cease to serve, as if he or she had resigned, effective the date of the certification.

It is my will and desire and I hereby direct that in the administration of my estate, my Independent Executor or any successor shall not be required to furnish any bond of any kind and that no action shall be had in any court in the administration of my estate other than the probating of this,

INITIALS:

LAST WILL AND TESTAMENT                                                                 PAGE 4

my Last Will and Testament, and the filing of any inventory, appraisement and list of claims of my estate that may be required.

## IX.
## POWERS OF EXECUTOR

The estate created or arising by virtue of my death and this instrument, my Last Will and Testament, shall be governed by and administered in accordance with the following provisions:

A. I hereby grant unto my Independent Executor or any successor named above, full power and authority over any and all of my estate and they are hereby authorized to sell, manage, and dispose of the same or any part thereof, and in connection with any such sale or transaction, make, execute and deliver proper deeds, assignments and other written instruments and to do any and all things proper or necessary in the orderly handling and management of my estate.

B. My Independent Executor or any successor named above, shall have full power and authority to compromise, settle and adjust any and all debts, claims and taxes which may be due from or owing by my estate.

C. My Independent Executor or any successor named above, shall have full power and authority to deal with any person, firm, or corporation including any trusts or trust estates created by this, my Last Will and Testament.

D. My Independent Executor or any successor named above, shall have full power to borrow money at any time and in any amount from time to time for the benefit of my estate, from any person, firm, or corporation or from any bank or trust company and to secure the loan or loans by pledge, deed of trust, mortgage or other encumbrances on the assets of the estate and from time to time to renew such loans and give additional security.

E. As compensation for his services hereunder, my Independent Executor or any successor named above shall be entitled to charge the same fees customarily charged for similar services in other estates at the time the services are rendered.

## X.
## SPENDTHRIFT PROVISION

No interest of any beneficiary in the corpus or income of my estate or of any trust created herein shall be subject to assignment, alienation, pledge, attachment, or claims of creditors of such beneficiary and may not otherwise be alienated or encumbered by such beneficiary, except as may be otherwise expressly provided herein.

## XI.
## MAXIMUM TERM OF TRUST

If any trust created hereunder shall violate any applicable Rule Against Perpetuities or any

INITIALS:

---

similar rule or law, my Trustee is hereby directed to terminate said trust on the date limited by such rule or law and thereupon the property held in such trust shall be distributed to the persons then entitled to share such income, notwithstanding any provision of this Will to the contrary.

## XII.
## IN TERROREM CLAUSE

If any beneficiary under this Will shall in any manner contest or attack this Will or any of its provisions, any share or interest in my estate given to such contesting beneficiary under this Will is hereby revoked and shall be disposed of as part of the residue of my estate.

## XIII.
## DEFINITIONS AND INTERPRETATIONS

For purposes of interpretation of this, my Last Will and Testament, and the administration of the estate and trusts established herein, the following provisions shall apply:

A.     The words "child, children, descendants, issue," and similar terms shall be deemed only to include children born to, or adopted (on or before twenty-five years of age) in, a lawful marriage.

B.     When a distribution is directed to be made to any person's descendants "per stirpes," the division into stirpes shall begin at the generation nearest to such person that has a living member.

C.     The use of the masculine, feminine or neuter genders shall be interpreted to include the other genders, and the use of either the singular or the plural number shall be interpreted to include the other number, unless such an interpretation in a particular case is inconsistent with the general tenor of this instrument. Any references herein relating to my Independent Executor shall include his successors regardless of the gender of the successors.

D.     This Will shall be probated in accordance with the laws of Texas, and should any provisions of the same be held unenforceable or invalid for any reason, the unenforceability or invalidity of said provision shall not effect the enforceability or validity of any other part of this Will.

IN WITNESS WHEREOF, I, GLENDA RHOADES, hereby sign my name to this, my last Will, on each page of which I have placed my initials, on this ___ day of __October__, 2007, at Aledo, Texas.

_____
GLENDA RHOADES,
Testator

INITIALS: _____

## ATTESTATION

The foregoing instrument was signed in our presence by GLENDA RHOADES and declared by to be last Will We, at the request and in the presence of GLENDA RHOADES and in the presence of each other, have subscribed our names below as witnesses on this _7_ day of October , 2007.

_Shelia Harvey_
WITNESS

_100 Maverick_
STREET ADDRESS

_Aledo, Tx. 76008_
CITY AND STATE

_Kenton Harvey_
WITNESS

_100 Maverick_
STREET ADDRESS

_Aledo TX 76008_
CITY AND STATE

INITIALS: _____

## SELF PROVING AFFIDAVIT

STATE OF TEXAS

COUNTY OF PARKER

BEFORE ME, the undersigned authority, on this day personally appeared GLENDA RHOADES, Shelia Harvey, and Kenton Harvey, known to me to be the Testator and the witnesses, respectively, whose names are subscribed to the annexed or foregoing instrument in their respective capacities, and all of said persons being by me duly sworn, the said GLENDA RHOADES, Testator, declared to me and to the said witnesses in my presence that said instrument is her Last Will and Testament and that she had willingly made and executed it as her free act and deed; and the said witnesses, each on their oath stated to me, in the presence and hearing of the said Testator, that the said Testator had declared to them that said instrument is her Last Will and Testament, and that she executed same as such and wanted each of them to sign it as a witness; and upon their oaths each witness stated further that they did sign the same as witnesses in the presence of the said Testator and at her request; that said Testator was at that time twenty-five years of age or over (or being under such age, was or had been lawfully married, or was then a member of the armed forces of the United States or of an auxiliary thereof or of the Maritime Service) and was of sound mind; and that each of said witnesses was then at least fourteen years of age.

_____
GLENDA RHOADES, Testator

_____
Witness

_____
Witness

SUBSCRIBED AND SWORN TO BEFORE ME by the said GLENDA RHOADES, Testator, and by the said Shelia Harvey and Kenton Harvey, Witnesses, this _ day of ____, A.D. 2007.

A. HARVEY
MY COMMISSION EXPIRES
May 19, 2010

_____
Notary Public, State of Texas

INITIALS _____

LAST WILL AND TESTAMENT                                          PAGE 8